IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MYRON C. PAYNE | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-1095 |
| | * | |
| MEGAN J. BRENNAN, Postmaster General, United States Postal Service, | * | |
| Defendant. | | |

******

**MEMORANDUM OPINION**

Pending before the Court in this employment discrimination suit is a motion to dismiss or, in the alternative, motion for summary judgment filed by Defendant Postmaster General Megan Brennan (ECF No. 28). The issues are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Defendant's motion will be GRANTED.

**I.  Procedural and Factual Background**

This case was the subject of the Court's prior memorandum opinion granting Brennan's motion to dismiss without prejudice so that Payne could amend his Complaint to cure pleading deficiencies. ECF Nos. 20, 21. Payne subsequently filed an Amended Complaint, incorporating by reference the factual allegations included in his initial Complaint. *See* ECF No. 25 ¶ 1. Although Payne failed to follow this Court's local rules with respect to filing an Amended Complaint, the Court recognizes that Payne is appearing *pro se*, and so will consider both the original Complaint and the Amended Complaint in deciding the current motion.

Payne began his USPS service as a letter carrier in 1987. ECF No. 1 ¶ 14. In May 2005, Plaintiff suffered an on-the-job back injury for which he filed a worker's compensation claim and was placed on limited duty. The limited duty assignment guaranteed Payne eight hours of medically approved modified assignments per workday. ECF No. 1 ¶¶ 15–16. In December 2008, Payne's worker's compensation case was closed, ending his limited-duty status. ECF No. 1 ¶¶ 18–19. In May 2009, Payne received a letter from one of his supervisors, Postmaster Darryl Jones, instructing Payne to submit a request to be placed on light duty, which Payne "reluctantly and involuntarily" submitted. ECF No. 1 ¶¶ 19, 20. After being assigned to light duty, Payne's work hours were reduced and subsequently fluctuated between two and six hours per day without notice or explanation. ECF No. 1 ¶¶ 21, 23, 24, 25.

On October 8, 2009, Plaintiff filed a grievance, challenging USPS's insistence that Plaintiff submit a light duty request and the reduction of his hours. ECF No. 1 ¶ 22. Payne alleged that his work hours continued to fluctuate between November 2009 and January 2010. On January 26, 2010, Plaintiff filed an EEOC complaint alleging discrimination, sexual harassment, and retaliation. ECF No. 1 ¶ 26. Following discovery, USPS moved for summary judgment, which the EEOC granted on June 6, 2013. More particularly, the EEOC determined that Payne had not established that USPS unlawfully discriminated against him. ECF No. 1 ¶ 27. Payne then moved for reconsideration and appealed the EEOC determination. The motion for reconsideration was denied and the EEOC determination affirmed. ECF No. 1 ¶ 28.

Payne then filed his initial Complaint in this Court on April 13, 2016, alleging claims of discrimination based on race, color, age, and disability as well as sexual harassment and retaliation. ECF No. 1. The Court granted USPS's motion to dismiss for failure to state a claim, but granted Payne leave to amend the complaint. ECF Nos. 20, 21.

On May 5, 2017, Payne amended his Complaint. As to Count I, Payne's disability discrimination claim, Payne added allegations of specific instances of mistreatment, including USPS not modifying Payne's work assignments in writing, denying Payne compensation by reducing his hours, coercing Payne into signing a light duty assigned form, presenting Payne with the ultimatum of working reduced hours in light duty or "go home," and creating a hostile work environment by "covertly retaliat[ing] against plaintiff when complaints were initiated." ECF No. 25 ¶ 4.[1] Payne also alleges that, because of his disability, he was treated less favorably than other employees. ECF No. 25 ¶ 5.

The amendments to Count II, Payne's Title VII color discrimination claim, are not altogether clear. Payne adds that "all comparators are of fair or tan complexioned [sic] and whose hours were not reduced or were in light-duty status [sic]," ECF No. 25 ¶ 9, which the Court takes to mean that individuals whose complexions were lighter than Payne's either did not have their hours reduced or were not placed in light-duty status. Payne also alleges that USPS did not make work available to him even though other employees both in and out of light-duty status were being given overtime work. ECF No. 25 ¶ 10.

Payne adds to Count III, his age discrimination claim, the following facts: that he was 50 years old at the time the contested actions took place; that he was approximately five years older than Jones; and that he was older than all "comparators." ECF No. 25 ¶ 11. He further alleges that overtime and work assignments were given to "the much younger comparators" despite Payne previously completing the same tasks. ECF No. 25 ¶ 12.

Count IV, Payne's sexual harassment claim, is now based on his supervisor Genese Rollins telling Payne to use his "big arms" to move boxes, a task outside of Payne's medically restricted abilities. ECF No. 25 ¶ 13, 14. Payne alternatively asserts that this comment

---

[1] Payne re-alleges these facts as part of his retaliation claim. *See* ECF No. 25 ¶ 20.

3

"illustrates a certain apathy or disregard . . . [to] Plaintiff's medical condition" even if it is not sexual harassment. ECF No. 25 ¶ 14. It appears that Payne complained internally about this comment, but that no formal investigation occurred. Payne asserts that some time afterward, "a letter of warning for poor attendance against Plaintiff was issued by . . . Rollins." ECF No. 25 ¶ 14. Payne does not allege to whom he made the complaint about Rollins' comment, the contents of the letter, or how the letter later was used by USPS.

Regarding Payne's Rehabilitation Act claim, Count V, Payne adds that his supervisor, Annett Ford, suggested that Payne be suspended for 14 days because he had engaged in a verbal altercation with a coworker. Payne asserts that despite the co-worker saying, "light-duty people need to get out of here," and then engaging in a verbal altercation with Payne, the coworker was not disciplined. ECF No. 25 ¶ 16. Although Payne ultimately received a letter of warning, not a suspension, ECF No. 25 ¶ 17, Payne asserts that references to his potential suspension in the face of his coworker receiving no discipline demonstrate that he was subject to a hostile work environment due to his disability. ECF No. 25 ¶ 17. Payne also asserts that he had been harassed because his supervisor required that Payne provide proof of his car trouble to substantiate Payne's claimed reason for being absent from work. ECF No. 25 ¶ 18.

Finally, as to the retaliation claim, Count VI, Payne adds that his change from limited to light duty, not receiving a permanent work assignment in writing that comported with his medical restrictions, and being told to "either work or go home," constitutes retaliation. ECF No. 25 ¶ 20. Payne also alleges that even after he prevailed in a nonspecific "grievance," management did nothing to address his concerns and spread "subtle comments" about his performance. ECF No. 25 ¶ 21. Payne further asserts, without amplification, that no

comparators were treated similarly and that a warning letter issued by Rollins provides further proof of retaliation. ECF No. 25 ¶¶ 14, 21.

Brennan moved to dismiss Payne's Amended Complaint, or in the alternative, for summary judgment on all claims. ECF No. 28. Brennan argues that Payne's discrimination claims fail because Payne's allegations regarding supposed comparators lack sufficient specificity to allow an inference that he was treated poorly because of a protected characteristic. As to Payne's sexual harassment discrimination claim, which Brennan construes as one based on a hostile work environment, Brennan argues that the complained-of conduct is not plausibly based on sex or gender. Alternatively, Brennan argues that the complained-of incidents are not severe and pervasive enough to state a claim for a hostile work environment. Finally, with respect to retaliation, Brennan argues that Payne has failed to allege any actionable adverse action or that such action was because Payne engaged in protected activity. The Court addresses each count in turn.

## II. Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) properly is granted when a complaint does not include sufficient factual allegations to render the plaintiff's claims facially plausible, or to permit reasonable inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To assess a motion to dismiss, a court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the favor of the plaintiff. *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 1999). However, when determining if a plaintiff has stated a valid claim, a court does not credit conclusory statements or a plaintiff's legal conclusions, even when the plaintiff purports them to be allegations of fact. *See Iqbal*, 556 U.S. at 678–79;

*Giarrantano v. Jonson*, 520 F.3d 298, 302 (4th Cir. 2008). Further, "[a] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 665.

Because Payne is proceeding *pro se*, the Court must construe his complaint liberally to allow for the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Liberal construction requires that if the Court can reasonably read the Complaint to state a valid claim, it must do so; however, the Court cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed."). Neither should the Court "conjure up questions never squarely presented . . . . Even in the case of *pro se* litigants, [district courts] cannot be expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

#### A. Counts I–V: Discrimination Based on Race, Color, Sex, Age, and Disability

Payne brings discrimination claims based on race, color, and sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2; age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a); and disability in violation of the Rehabilitation Act, 29 U.S.C. § 794(a). These statutes require that a plaintiff plausibly aver that *because of* a protected characteristic—race, color, gender, age, or disability—his employer took some adverse employment action against him. As amended, Payne's allegations still do not contain sufficient factual material to infer that this occurred here.

Discrimination can be alleged as either a disparate treatment or a hostile work environment claim. To sustain a disparate treatment claim, a plaintiff must show (1) that he was a member of a protected class (or is over the age of 40), (2) that his employer took an adverse employment action against him, (3) that his job performance was satisfactory, and (4) that similarly situated employees outside the protected class received more favorable treatment. *See Cepada v. Bd. Of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 510, 512 (D. Md. 2011).

To prove a hostile work environment claim, a plaintiff must show that the complained-of conduct was (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment; and (4) imputable to his employer. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015). Whether the plaintiff has established the existence of a hostile work environment depends on "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000). Discrete acts that are little more than a "mere utterance of an epithet which engenders offensive feelings" do not amount to a hostile work environment. *Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (internal quotation marks and citations omitted). Rather, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

1. **Hostile Work Environment**

Construing Payne's assertions liberally, the Court interprets the Amended Complaint as alleging a hostile environment on the basis of race, sex, and disability. For the reasons discussed

below, the allegations relating to each claim are insufficient to infer the existence of a hostile work environment.

### a. Hostile Environment on the Basis of Race

Payne's allegations relate to the process by which Payne was put on light duty status, required either to do work he was not physically capable of doing or going home, and "covert retaliat[ion]" after Payne initiated complaints. None of these allegations, however, appear plausibly to be based on Payne's race. Nor do they appear to be physically threatening or humiliating. Without additional facts making out sufficiently hostile conduct based on race, this claim fails.

### b. Hostile Environment on the Basis of Sex

Payne's sexual harassment claim also appears to be based on a hostile work environment theory. Payne bases his sexual harassment claim on his supervisor Rollins asking him to use his "big arms" to move boxes. The Court cannot plausibly conclude that this comment was based on Payne's sex. But, even if it were, a single comment of this kind cannot as a matter of law state a claim for a hostile work environment. *See Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996).

### c. Hostile Environment on the Basis of Disability

Payne's allegations relating to a hostile work environment based on disability fare no better. In support of his claim that he worked in a hostile environment, Payne points to his coworker's disparaging comment regarding individuals on light-duty status, disciplinary action in connection with the ensuing altercation with that coworker, and his supervisor's insistence that

he provide proof of car trouble to justify his absence from work. ECF No. 25 ¶¶ 16–17. None of these events, taken singularly or together, create severe or pervasive hostile environment. *See Boyer-Liberto*, 786 F.3d at 277; *Faragher*, 524 U.S. at 788; *High v. R&R Transportation, Inc.*, 242 F. Supp. 3d 433, 442–43 (M.D.N.C. 2017). Once again, therefore, this claim must fail.

### 2. Disparate Treatment

Payne's Amended Complaint lacks sufficiently detailed allegations of fact regarding supposed comparators to state a disparate treatment claim. Where, as here, a plaintiff's discrimination claim rests entirely upon comparator analysis, a plaintiff "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (citing *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014)). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)). Comparators need not be precisely equivalent in position to a plaintiff, but there must be sufficient similarity between them to allow appropriate comparison. *See Roberts v. Coffey*, No. CIV.A. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D. Md. June 4, 2012); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel . . . ."), *aff'd*, 553 U.S. 442 (2008).

Payne has not alleged facts to support the existence of actual comparators, who were treated differently, sufficient to raise an inference that Payne suffered discrimination based on any protected status.[2] Rather, Payne states in conclusory fashion that "[w]hen compared to comparators, whether in or outside of a protected class, the record is replete with instances where because of Plaintiff['s] race, oddly enough, he was subjected to discriminatory practices," ECF No. 25 ¶ 5; that "all comparators . . . of fair or tan complexioned [sic]" either did not have their hours reduced or were not on light-duty status, ECF No. 25 ¶ 9; that Payne was told "that there was no available work for Plaintiff yet overtime was being given to comparators," ECF No. 25 ¶ 10; that Payne is "older than all of the comparators," ECF No. 25 ¶ 11; that "overtime and work assignments were given to the much younger comparators," ECF No. 25 ¶ 12; that a hostile work environment existed "against this disabled worker and not comparators," ECF No. 25 ¶ 17; that "Plaintiff[ ] was the only light-duty comparator whose hours were substantially reduced and fluctuated," ECF No. 25 ¶ 19; and that "[n]one of the comparators were treated in . . . a manner" like Payne, ECF No. 25 ¶ 21. Payne's other allegations provide no additional facts to support a finding that any other individuals were similarly situated. *See, e.g.*, ECF No. 25 ¶ 10 (overtime being given to other workers); ¶¶ 16–17 (difference in discipline received).[3] The Court therefore is unable to eliminate "confounding variables" and cannot plausibly infer that Payne was treated adversely because of an illicit motive. *Cf., e.g., Johnson v. Baltimore City Police Dep't*, No. CIV.A. ELH-12-2519, 2014 WL 1281602, at *20 (D. Md. Mar. 27, 2014). *See also Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) (dismissing a claim where "the complaint fails to

---

[2] Payne's sex discrimination claim does not appear to be based on disparate treatment, *see* ECF No. 25 ¶¶ 13–14, but to the extent that he intends such a claim, this argument applies with equal force.
[3] Further confusing the matter, Payne appears to be include individuals both outside *and* inside his protected class as comparators. *See* ECF No. 25 ¶ 5.

establish a plausible basis for believing [the comparator] and Coleman were actually similarly situated or that race was the true basis for Coleman's termination."). Without more, Payne's claims do not plausibly aver that he was discriminated against because of his race, color, sex, age, or disability status by virtue of disparate treatment. Accordingly, the Court dismisses Counts I, II, III, IV, and V of Payne's Amended Complaint.

### B. Count VI: Retaliation

Title VII prohibits an employer from taking an adverse employment action against an employee for pursuing Title VII rights or remedies. *See Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017). To prove retaliation, a plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the employer took an adverse employment action against him, and (3) that a causal link exists between the two actions. *See Boyer-Liberto*, 786 F.3d at 281 (internal quotation marks and citation omitted). An adverse employment action must be sufficiently serious to dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Payne points to a series of events which, in his view, support his retaliation claim. Critically, however, Payne never avers facts to make plausible a causal connection between his engaging in protected activity and the adverse action taken in response. For example, Payne asserts that his transfer from limited to light duty was retaliatory, but fails to aver how this action is linked to any protected activity in which he had engaged prior to the transfer. Likewise, Payne's assertion that Defendant refused to give him assignments within his medical restrictions cannot be considered retaliatory because Payne has offered no facts which link this refusal to Payne having engaged in protected activity. ECF No. 25 ¶ 20. Nor can his assertion that he was "given an ultimatum[ ] of either work or go home" constitute retaliation because, once again,

Payne fails to plausibly aver that the ultimatum was levelled in response to his having engaged in any protective activity. ECF No. 25 ¶ 20.[4]

Payne suggests that Defendant's spreading of "subtle comments" about his work performance in the wake of a successful grievance, and Defendant not "addressing the concerns" raised in the grievance, amounts to retaliation. ECF No. 25 ¶ 21. This theory also fails. First, a retaliation claim cannot be based on Defendant's *inaction* in the wake of a grievance. *See Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 546–47 (W.D. Pa. 2010) (cited by *Robinson v. G.E. Aviation*, No. 7:10-cv-00240-BR, 2012 WL 607559, at *2 (E.D.N.C. Feb. 24, 2012)); *cf. Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011). Second, Payne's characterization of an act as "retaliation" is a conclusory allegation that the Court cannot credit; Payne has not pleaded sufficient facts to support that "subtle comments" or "covert retaliation" constituted a materially adverse action. Without more, Payne's retaliation claim must be dismissed.

Finally, Payne seems to claim that Rollins retaliated against him after he complained about Rollins saying that Payne should use his "big arms" to move boxes. *See* ECF No. 25 ¶ 14. Even if Payne has sufficiently alleged that he engaged in protected activity by complaining about perceived sexual harassment, the Court cannot see how the nonspecific letter of warning that followed as to Payne's "poor attendance" is "materially adverse." *See Burlington Northern*, 548 U.S. at 68; *Faragher*, 524 U.S. at 788; *Spencer v. Virginia State Univ.*, 224 F. Supp. 3d 449, 459–60 (E.D. Va. 2016). Payne fails to allege *any* adverse consequences that flowed from this

---

[4] This claim also fails because merely being told to "work or go home" is not a sufficiently adverse employment action. *See Burlington Northern*, 548 U.S. at 68 ("[I]t is important to separate significant from trivial harms . . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."); *Faragher*, 524 U.S. at 788; *cf. Spencer v. Virginia State Univ.*, 224 F. Supp. 3d 449, 459–60 (E.D. Va. 2016) (reference to plaintiff as a troublemaker, refusal to sign plaintiff's time sheet, encouragement of plaintiff's student to file a complaint, chastisement of plaintiff via e-mail for challenging defendant's pay practices, and denying plaintiff opportunity to teach a class outside of the defendant university did not alone or together constitute a materially adverse employment action).

poor attendance letter.  Rather, Payne asserts that the letter was used "in an *attempt* to impose progressive discipline" without any factual assertion that discipline was ever imposed.  *Cf. Jones v. Dole Food Co., Inc.*, 827 F. Supp. 2d 532, 549–50 (W.D.N.C. 2011) (plaintiff's belief that a written warning could have impacted later job performance evaluations was insufficient to show adverse action when it was not so used).  Therefore, Payne has not cured the deficiencies of his retaliation claim, and Count VI also must be dismissed.

### C. Conclusion

Despite the benefit of this Court's previous opinion in this case and the opportunity to amend his Complaint, Payne still has failed to plead facts sufficient to raise his right to relief above a speculative level.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor is there any indication that any further amendment would or could cure these pleading deficiencies.  Accordingly, the Court DISMISSES Payne's Amended Complaint with prejudice.  *See Rubino v. New Action Mobile Indus., LLC*, 44 F. Supp. 3d 616, 625 (D. Md. 2014).  A separate Order follows.

| | |
|---|---|
| 2/15/2018 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |